<u>DECLARATION OF GREGORY NICOLAYSEN</u>

I, GREGORY NICOLAYSEN, declare as follows:

1. I am an attorney who serves on the Federal Indigent Defense Panel in Los Angeles. On or about March 27, 2000 (Pacer Docket #97), I was appointed to represent Erik Damon Boyd in connection with the case, <u>United States v. Allen Pace III, et. al.</u>, No. 99-1007-LGB. Mr. Boyd was charged in a fourth superseding indictment with conspiracy to commit robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951 (count one), interference with commerce by robbery, in violation of 18 U.S.C. § 1951 (count two), and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (count three). Mr. Boyd proceeded to trial along with co-defendant Allen Pace. Following trial, Mr. Boyd was convicted of counts one and two (the conspiracy and robbery charges) but was found not guilty of count three (using and carrying a firearm during and in relation to a crime of violence).

2. At the time that I was appointed to represent Mr. Boyd, I had been practicing law since 1981; was already certified as a specialist in criminal law by the State Bar of California; and had tried over a dozen federal criminal cases.

3. I have read Mr. Boyd's petition under 18 U.S.C. § 2255, filed on July 5, 2007. I make this declaration in connection with the government's response to defendant's petition

and if called as a witness, I could and would testify to the facts set forth in this declaration.

4. I have a recollection about this case and I believe that I can respond to the allegations raised by Mr. Boyd based on my recollection and my custom and practice.

5. Mr. Boyd's petition raises the following claims relating to my representation:

(1) that I failed to request a mistrial due to retroactive misjoinder after the jury found Mr. Boyd not guilty of count three, using and carrying a firearm during a crime of violence, and that there was a reasonable probability that a request for a mistrial would have been granted.

(2) that I failed to object to, or move to suppress, a suggestive identification procedure during trial when co-defendant Hill, who had pled guilty and was cooperating with the government, identified Mr. Boyd as being involved in the robbery.

(3) that I failed to appeal Mr. Boyd's conviction and only appealed Mr. Boyd's sentence.

6. In addition to the above claims, Mr. Boyd also claims that his petition, which was filed over two years after his conviction was affirmed on appeal, is timely because I affirmatively misled him to believe that his appeal was still

pending with the Court of Appeals after the appeal had been denied. Mr. Boyd claims that he did not find out that his appeal had been decided until September 2006 when he contacted the Ninth Circuit directly to request an update on his appeal and found out, from the docket, that his appeal had been denied in February 2003. Mr. Boyd further claims that I failed to provide him with the records and files relating to his case and that my failure to do so has prevented him from filing his petition in a more timely manner and setting forth detailed allegations in the petition.

7. I contest each of Mr. Boyd's allegations of ineffectiveness on my part and explain the circumstances as follows:

8. With respect to Mr. Boyd's claim that I affirmatively misled him into believing that his appeal was still pending before the Court of Appeals, I recall that during the pendency of the appeal, I spoke to a member of Mr. Boyd's family on two occasions, once while the appeal was pending to keep the family apprised of the status of the appeal, and once after the Ninth Circuit's opinion had been issued, to advise them of the ruling. I was informed that the family communicated on a regular basis with Mr. Boyd and that they would convey my information to him. Both of my conversations were very pleasant. I specifically recall that, shortly after the Ninth Circuit affirmed the conviction on February 21, 2003, I informed a female member of

Mr. Boyd's family that the Court of Appeals had denied Mr. Boyd's appeal. I believe that this information was relayed to Mr. Boyd because I did not receive any calls from Mr. Boyd or any further calls from his family members regarding the status of the appeal. If Mr. Boyd had contacted me during this time period, I would have told him that his appeal had been denied. I did not, at any time, lead Mr. Boyd to believe that his appeal was still pending after the Ninth Circuit issued its decision on February 21, 2003.

9. I received and reviewed the items of discovery which had been produced by the government, consisting of over 8,300 pages. From his arrest all the way to the commencement of trial, Mr. Boyd was housed at the Kern County facility (no longer used by the U.S. Marshals), which required that I meet with Mr. Boyd in the Roybal courthouse lockup. Mr. Boyd was not housed at MDC-LA during the pretrial period. During the course of my representation of Mr. Boyd, I conducted numerous, lengthy client meetings with Mr. Boyd in the Roybal courthouse lockup, during which time we discussed in depth the pretrial discovery materials; plea-related issues and strategies; and matters pertaining to trial preparation. I also provided Mr. Boyd with a copy of these discovery materials. I discussed my review of the discovery materials with Mr. Boyd, the nature of the charges, the evidence and available defenses. To the best of my knowledge, Mr. Boyd had a copy of the extensive discovery produced by the

government prior to the commencement of trial in February 2001 and retained those materials when, after sentencing, he was moved to his designated Bureau of Prisons facility. To the extent the government provided additional discovery materials during the trial, I also provided him with his own set, and we discussed these materials in depth. I did not provide Mr. Boyd with copies of the trial transcripts in this case.

10. The discovery materials produced by the government included memoranda of interviews conducted with the cooperating defendants who had participated in the robbery and identified Mr. Boyd as one of the robbers involved in the robbery. I specifically recall discussing the following items of discovery with Mr. Boyd and the impact this evidence would have on Mr. Boyd's case:

a. Co-defendant Freddie McCrary stated that he had accompanied Mr. Pace to a Taco Bell in Long Beach where Pace approached Boyd, who was known to McCrary, about participating in the planned robbery. During the drive back, Pace told McCrary that Boyd was "in," which McCrary understood to mean that Mr. Boyd had agreed to participate in the robbery. McCrary also confirmed that, along with the other robbers, Mr. Boyd attended the party at Kimberly Williams' house prior to the robbery, participated in the robbery, returned to the party after the robbery and received a share of the robbery proceeds after the

5

party was over. McCrary further confirmed that Mr. Pace announced that he would be giving Mr. Boyd his share of the robbery proceeds so as not to arouse suspicion in the aftermath of the robbery.

    b. Mr. Boyd's father stated that shortly after the robbery (which took place in September 1997), Boyd regularly provided him with cash. He deposited the currency into his business bank account and used these funds to issue monthly checks to Boyd.

    c. Financial records, including bank records, corroborated the testimony of Mr. Boyd's father. Prior to trial, I met on several occasions with my client's father, who ultimately testified for the government against his son at the trial. The father candidly explained to me in detail the underlying circumstances involving the numerous cash deposits into his bank accounts, as referenced in the bank records produced by the government. As the result of my discussions with the father, I was satisfied that there was a proper factual basis to support a guilty plea, and I encouraged Mr. Boyd to accept a plea deal that I negotiated with the government. Mr. Boyd tentatively accepted the plea deal but later rejected it and chose to proceed to trial.

    11. At trial, four of the six robbers who had pleaded guilty -- Freddie McCrary, Eugene Hill, Terry Brown and Thomas Johnson -- testified about the robbery, its planning and

execution.  McCrary and Hill were able to identify Mr. Boyd as one of the robbers and their testimony was consistent with their pre-trial statements.  Brown could not identify Mr. Boyd by name or point him out in the courtroom but he confirmed his pre-trial tentative photospread identification of Mr. Boyd as one of the robbers.  Kimberly Williams testified that she hosted a party at her house on the evening of September 12, 1997 and that, after leaving the party sometime in the evening, Hill returned to the party at 1:00 or 2:00 a.m., with Pace, McCrary, Brown and Boyd.  Mr. Boyd's father testified that after his son was arrested, he confessed his involvement in the robbery to him.  The co-operating defendants also testified that each of the robbers was armed with a gun during the commission of the robbery and the victims testified that the robbers had used guns during the robbery.

12.  Mr. Boyd claims that I failed to request a mistrial due to retroactive misjoinder after the jury found him not guilty of the gun charge, using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).  Mr. Boyd claims that the court would have granted the request for a mistrial and that consequently, evidence about Mr. Boyd's use of a gun during the robbery would not have been admissible. (Petition at p. 5).  I did not request a mistrial due to retroactive misjoinder because I did not believe that such a

7

request had any merit.  The charge of use of a firearm under section 924(c) was inextricably intertwined with the government's allegations and evidence pertaining to the overall conspiracy to commit the robbery.  To sever the 924(c) count would require the court to conduct two repetitive trials in which the government would have to present the entire evidence of the robbery and the conspiracy at each trial, first in the trial of the conspiracy charge and second, in the trial of the 924(c) charge to prove the allegation that the firearm was used in connection with a crime of violence. Based on the discovery provided by the government and the testimony at trial regarding the use of guns during the robbery, I believed that the charge of using and carrying a firearm during and in relation to a crime of violence was properly charged in the indictment.

13.  Mr. Boyd claims that I failed to object to a suggestive identification procedure at trial relating to the testimony of Eugene Hill.  (Petition at 6).  During his trial testimony, Mr. Hill identified Mr. Boyd as one of the robbers. I extensively cross-examined Mr. Hill about his prior statements to the government in which he had repeatedly identified the robbers as himself, Pace, McCrary, Brown, Johnson and one other individual, a black male who was unknown to him and possibly two other individuals who were unknown to him, in order to establish that Mr. Hill had not identified Mr. Boyd by name as one of the

8

robbers in his previous statements. Mr. Hill acknowledged his prior statements to the investigating agents and also admitted, during cross-examination, that he had not seen the unknown robbery participants since the date of the robbery. During re-direct examination, Mr. Hill admitted that he had identified photograph number two in a photospread as one of the robbers who participated in the robbery and this photospread was introduced into evidence. Photo number two was a photograph of Mr. Boyd. During re cross-examination, Mr. Hill admitted that when he identified photograph number two, he stated, "Yeah, I think that's him. It looks like him." (2/15/01 RT 115). Mr. Hill also admitted that he had not seen the person he identified in the photograph since September 13, 1997, the date of the robbery. Upon further questioning by the government, Mr. Hill testified that when he selected photograph number two as one of the robbery participants, he had also told the investigating agents that he would be able to make a better identification if he could see the person depicted in the photograph. (2/15/01 RT 117-118).

14. I did not object to the admission of the photospread identification by Mr. Hill because, as a tactical matter, I believed that Mr. Hill's inability to conclusively identify the photograph and the fact that he had not seen the individual depicted in that photograph since the date of robbery, undermined his credibility with respect to his identification of Mr. Boyd as

one of the robbery participants. In addition, contrary to Mr. Boyd's claim, I did not regard Mr. Hill's identification as "pivotal" to Mr. Boyd's conviction. Other co-conspirators referenced earlier in this declaration testified against Mr. Boyd at trial, as did his own father, who testified about a confession that Mr. Boyd made to him during a private meeting with Mr. Boyd shortly prior to the trial. In short, in light of the testimony of Mr. McCrary regarding Mr. Boyd's involvement in the robbery, the identification of Mr. Boyd as the sixth robber and the testimony of Mr. Boyd's father to whom Mr. Boyd had confessed his involvement in the robbery, I do not believe that the admission of Mr. Hill's pre-trial tentative identification of Mr. Boyd from a photospread was material to the jury's finding of guilt, and that any error that may have possibly occurred was harmless. I also did not believe that this issue had any merit. For these reasons, I did not raise the issue of a suggestive identification procedure during the appeal.

15. Mr. Boyd claims that I assured him that I would appeal both his sentence and conviction but only appealed his sentence. (Petition at 8). My recollection is that I informed Mr. Boyd that, based on my professional evaluation of this case, I believed that the only meritorious issues for appeal concerned Mr. Boyd's sentence, namely, (1) the district court's imposition of a five-level gun enhancement under the robbery guideline,

U.S.S.G. 2B3.1, even though Mr. Boyd had been acquitted of the § 924(c) charge, and (2) the district court's application of a two-level enhancement based on its finding at the sentencing hearing that a victim had sustained bodily injury from the robbery. Due to the overwhelming evidence of Mr. Boyd's participation in the robbery, including the damaging testimony of Mr. Boyd's father, I did not believe, based on my review of the trial transcripts, that there were any meritorious issues for appeal relating to Mr. Boyd's conviction. However, I believed that if we prevailed on the sentencing issues, Mr. Boyd's sentencing exposure could be significantly reduced at a re-sentencing hearing. Accordingly, I decided as a tactical matter, to raise the sentencing issues on appeal.

16. At trial, I cross-examined the government's witnesses, particularly those witnesses who had identified defendant as participating in the robbery, with respect to their own inconsistent statements and differing accounts relating to the planning and execution of the robbery, prior statements which differed from the testimony they had provided at trial and their motive to provide false testimony inculpating Mr. Boyd. I also objected, at sentencing, to the court's finding that a victim had sustained bodily injury from the robbery and requested an opportunity to cross-examine the victim at the sentencing

hearing.

I declare the above to be true and correct to the best of my knowledge.

Dated: April 16, 2008.

GREGORY NICOLAYSEN